# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

MATTHEW LAMONT ROBINSON,

    Plaintiff,

vs.

CHAD SHOVER,

    Defendant.

No. C22-0005-LTS

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case is before me on a motion (Doc. 23) for summary judgment filed by defendant Chad Shover. In support, Shover filed a brief (Doc. 23-1), a statement of material facts (Doc. 23-2) and an appendix (Doc. 23-3). Plaintiff Matthew Robinson did not file a resistance. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On January 11, 2022, Robinson commenced this action by filing a 42 U.S.C. § 1983 complaint (Doc. 1-1) and motion (Doc. 1) to proceed in forma pauperis. The complaint includes various claims, including a retaliation claim against Shover. Robinson asserts Shover "used threats and intimidation to try and deter the Plaintiff's accusation and used threats and intimidation to prevent [plaintiff] [from] filing against Sergeant McElmeel while performing his duties" at the Linn County Correctional Center.[1] Doc. 1-1 at 9. Robinson also stated that "Shover [r]emoved the Plaintiff from the Unit 2G on, accompan[i]ed by Officer Williams and another Deputy yelling at me in an attempt to intimidate the Plaintiff from filing a grievance on him relating to this issue." *Id.* at 11.

---

[1] Robinson filed several grievances about Sergeant McElmeel complaining that McElmeel misinformed him where to send forms for a § 1983 suit. *See, e.g.*, Doc. 23-3 at 28.

Robinson also filed a motion (Doc. 3) to appoint counsel, motion (Doc. 6) for discovery, motion (Doc. 14) for subpoenas and several supplements (Docs. 2, 5, 13) to his complaint. One of Robinson's supplements asserts that Shover "tried and did attempt to intimidate the Plaintiff from filing grievances and impe[]ding on the federal investigation." Doc. 2-1 at 9. Robinson attached grievances he filed with Linn County Correctional Center discussing his interaction with Shover. Doc. 2-1 at 10-14.

On September 16, 2022, I granted Robinson's motion to proceed in forma pauperis and allowed a retaliation claim to proceed against Shover. Doc. 16. I denied Robinson's remaining claims against Linn County Correctional Center, Brian Gardner, Renee Henderson and Sergeant McElmeel. I also denied without prejudice to refiling Robinson's motions to appoint counsel, for discovery and for subpoenas. *Id.* Shover then filed an answer (Doc. 21) and now seeks the entry of summary judgment.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could

2

return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. RELEVANT FACTS

Robinson did not respond to Shover's statements of material facts, nor did he file a statement of additional material facts. Pursuant to Local Rule 56(b), all facts set forth in Shover's statement of material facts are deemed admitted for purposes of his motion for summary judgment. *See* LR 56(b) ("The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact."); *see also* Fed. R. Civ. P. 56(e). As such, the following facts are undisputed:

Robinson was detained at the Linn County Correctional Center from October 26, 2021, to February 9, 2022. Doc. 23-2 at 1, ¶ 1. Inmates who are in custody at Linn County Correctional Center for longer than 24 hours receive a rule book, which recites the facility's grievance procedure. Doc. 23-3 at 4, ¶ 10. When an inmate has a grievance, he must submit the grievance in writing and he will be given an initial written response within ten days. *Id.* at 50. The rule book provides that "[i]f the inmate disagrees with the response, he/she may then appeal to the Jail Administrator in writing." *Id.* at 51. In addition, "[s]taff shall attempt an informal resolution to address or correct any issues that can be resolved within their control. Inmates are still allowed to submit a grievance." *Id.*

Chad Shover was a Lieutenant at the Linn County Correctional Center, whose duties included reviewing and resolving grievances. Doc. 23-3 at 4, ¶¶ 8-9. Shover answered Robinson's grievances and kites between October 26 and November 15, 2021. *Id.* at 1, ¶ 3. On November 15, Shover responded to nine grievances that Robinson filed between November 11 and November 15. Doc. 23-2 at 1, ¶ 4. Robinson was removed from his cell block to a conference room to meet with Shover to discuss grievances on, or shortly after, November 15. Doc. 23-2 at 1, ¶¶ 5-6. Robinson was then returned to his cell block. *Id.* at 1, ¶ 6. Shover has submitted an affidavit in which he states that he decided to meet with Robinson to explain that he did not need to file multiple grievances on the same matter and because "from the tone of Mr. Robinson's grievances and their repetitive nature, I believed that our communication via kiosk wasn't going well and I

4

hoped speaking in person would help." Doc. 23-3 at 8, ¶ 6. Shover further attests that "[o]ur conversation was no more than a few minutes in length, and I maintained an appropriate tone and separation from Mr. Robinson both for everyone's safety but also because this simply was not a situation of heightened stress or concern." *Id.* at 8, ¶ 7.

After their meeting, Robinson filed multiple grievances detailing complaints against Shover. Doc. 23-3 at 4, ¶ 15. Beginning on or about November 18, either Pete Wilson or Matthew Sandvick reviewed and resolved Robinson's grievances and requests. Doc. 23-2 at 2, ¶ 16; Doc. 23-3 at 4, ¶ 14. Pete Wilson was the Jail Administrator and Matthew Sandvick was the Assistant Jail Administrator at the Linn County Correctional Center during Robinson's detention between October 2021 and February 2022. Doc. 23-3 at 3, ¶¶ 5, 8. Wilson reviewed and responded to the grievances about Shover on November 18 and 19. *Id.* at 4, ¶ 15.

Specifically, on November 16, Robinson submitted a grievance entitled "[t]o the Jail Administrator" that stated in part that "Shover came and had me pulled off the unit and yelled at me along with two deputies and [ ] retaliated and intim[i]dated me about filing gr[i]evinces which is my right." Doc. 23-3 at 37. On November 17, Robinson filed a grievance entitled "appeal to gr[i]evance f[i]led [o]n Lt. Shover" that complained about officers responding to grievances about them as well as the Lieutenant "coming and calling me to a small room and intimidating" him until he was "afraid to speak of the situation anymore." *Id.* at 38. Wilson responded that he or Sandvick "will be responding to any grievances you submit." *Id.* On November 18, Robinson filed a grievance entitled "to [M]ajor [W]ilson" that stated in part that the deputies took him to a conference room and "gloved up" and Shover told him to stop filing grievances. *Id.* at 40. Hours later Robinson filed another grievance entitled "[M]ajor [W]ilson" that stated in part that coming for a face-to-face meeting with two deputies who put on gloves was "an act of aggression and intimidation." *Id.* at 41. Sandvick submitted an affidavit in the instant case in which he states that Robinson did not appeal Wilson's resolution of those grievances. *Id.* at 4, ¶ 15.

5

Robinson continued to file other grievances after meeting with Shover. Doc. 23-2 at 2, ¶ 14. In total, Robinson filed at least 31 grievances and requests between November 15 and February 9. *Id.* at 2, ¶ 15; Doc. 23-3 at 5, ¶ 19. Grievances from December and January, for example, complain about failure to receive canteen orders and exposure to covid-19. Doc. 2 at 2-6, 9-10.

Robinson was moved between cells on several occasions between November and February. Robinson was moved to temporary cells because of court appearances on November 18, November 30, December 7 and December 15. Doc. 23-2 at 1, ¶ 7. On December 16 through December 17, Robinson moved cells because he spit on another inmate. *Id.* at 1, ¶ 8. Robinson shifted cells on December 22 and December 27 because he was being transported to the hospital. *Id.* at 1, ¶ 9. He was also moved on December 27 because of Covid-19 quarantine, and again on January 7 when his quarantine ended. *Id.* at 2, ¶¶ 10, 11. Finally, Robinson was moved on February 7, 2022, for a pre-transfer quarantine prior to his transfer to the Iowa Medical Classification Center. *Id.* at 2, ¶ 12. Robinson's cell block status and placement were not affected after speaking to Shover on or shortly after November 15. *Id.* at 2, ¶ 13. Shover states in his affidavit that "I did not reassign Mr. Robinson's cell/housing at any point during his incarceration, that is the subject of his claim. All changes in cell location during the October 26, 2021-February 9, 2022 incarceration were due to logistical reasons and were determined by other staff." Doc. 23-3 at 9, ¶ 9. Sandvick attests that "I reviewed Mr. Robinson's cell block placement and have determined that all placements were made for penological reasons." *Id.* at 5, ¶ 20.

## V. ANALYSIS

Under LR 56(c), "[i]f no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." Because Robinson did not file a resistance, Shover's motion could be granted for that reason alone. Nonetheless, I will undertake an analysis of Shover's arguments as to the merits of

6

Robinson's claim. Shover contends that summary judgment is appropriate because there is no genuine issue of material fact as to whether Shover retaliated against Robinson, Shover is entitled to qualified immunity and Robinson failed to exhaust available administrative remedies.

*A.    Retaliation*

Shover contends Robinson is unable to demonstrate that Shover unlawfully retaliated against Robinson. *See* Doc. 23-1 at 6-9. Shover argues that there is no evidence of wrongful conduct by Shover and that Robinson's conclusory allegations that he was intimidated and retaliated against are insufficient. *Id.* at 6-7.

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted). Acts by prison officials may be actionable under § 1983 if conducted in retaliation for the exercise of a constitutionally-protected right, even if those acts would have otherwise been proper. *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990). Protected conduct includes the filing of grievances as a part of a prison procedure. *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989). To state a claim for retaliation, a prisoner must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty. Mo.,* 738 F.3d 907, 911 (8th Cir. 2013); *see also Williams v. Silvey*, 375 F. App'x 648, 650 (8th Cir. 2010) (unpublished); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (stating that alleged retaliatory action must be such that it would chill person of ordinary firmness from engaging in protected activity); *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (holding that threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure).

7

Speculative and conclusory, or *de minimis* allegations, however, cannot support a retaliation claim. *Doering v. Reed,* No. 6:15-CV-06093, 2016 WL 3148642, at *3 (W.D. Ark. Apr. 29, 2016), *report and recommendation adopted sub nom., Doering v. Reed*, No. 6:15-CV-6093, 2016 WL 3162137 (W.D. Ark. June 3, 2016); *see also Rustan v. Rasmussen*, 208 F.3d 218 (8th Cir. 2000) (unpublished) (finding that allegations that defendants harassed and verbally threatened him in retaliation for a grievance did not form the basis of a cognizable § 1983 claim).

Here, Robinson's retaliation claim asserts that Shover used threats and intimidation against Robinson when Shover, along with two deputies, removed Robinson from his unit and yelled at him to intimidate him from filing grievances. Doc. 1-1 at 9, 11. This claim is conclusory and lacks specificity or clarity. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (dismissing a speculative and conclusory allegation of retaliation). Robinson's complaint does not clearly explain what threats Shover issued and Robinson did not submit an affidavit or otherwise provide factual support for the general allegations in his complaint. Likewise, Robinson's grievances do not explain what Shover said, indicating only that the face-to-face aspect of the conference room meeting, the alleged yelling and the presence of deputies wearing gloves were all intimidating.[2] Even if the alleged facts are true, they are not so serious or threatening as to chill an ordinary person from filing further grievances.[3] *See Graves v. N. Dakota State Penitentiary,* 325 F. Supp. 2d 1009, 1012 (D.N.D. 2004), *aff'd,* 179 F. App'x 399 (8th Cir. 2006) ("The conduct is not pervasive or severe enough to amount to a constitutional violation. As for the numerous alleged incidents of retaliation, there is no

---

[2] Aside from retaliation, "[i]n the context of Section 1983, neither verbal threats, taunts, name calling, nor the use of offensive language state a claim of constitutional dimension." *Webb v. Smay,* No. 109-CV-00037-JMM-JJV, 2010 WL 2691174, at *3 (E.D. Ark. June 17, 2010). *See also McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983).

[3] They certainly did not chill Robinson from filing further grievances.

clear indication from the record that such incidents relate to the conduct complained of by [plaintiff] in the complaint. In addition, the allegations of retaliation lack specificity and do not appear to rise to the level of a constitutional violation.").

The jail's rule book indicates that staff should attempt "an informal resolution to address or correct any issues that can be resolved within their control." Doc. 23-3 at 51. Nothing in the record demonstrates it was improper for an officer to meet with an inmate in a conference room to seek resolution. Shover, in turn, attests that "[a]t no point did I take any punitive act against Mr. Robinson for filing grievances in the Linn County Correctional Center" and "[a]t no point did I threaten, harass, or intimidate Mr. Robinson to prevent him from filing grievances or for any other reason." Doc. 23-3 at 9, ¶¶ 10-11. Robinson's allegations of a face-to-face meeting in a conference room with "threats and intimidation" fail to create a genuine issue of material fact of retaliation.

Robinson's allegation that Shover "[r]emoved the Plaintiff from the Unit 2G" appears to constitute an assertion that Robinson was removed from his unit to the conference room solely for the meeting and then immediately returned to his unit. To the extent Robinson alleged he was removed to a different housing unit as retaliation for his filing of grievances, the record demonstrates that every housing unit move for Robinson stemmed from other valid reasons and did not involve Shover. Thus, Robinson's housing movement cannot sustain a retaliation claim.

Robinson has not demonstrated that there is a genuine issue of fact that Shover unlawfully retaliated against him. Therefore, Shover is entitled to summary judgment on that claim.

### B. *Qualified Immunity*

Shover argues, alternatively, that he is entitled to qualified immunity on Robinson's retaliation claim because it was not clearly established at the time of Shover's conduct that it constituted a violation of Robinson's constitutional rights. Doc. 23-1 at 8-9. Shover argues that "[t]here is no clearly established right for an inmate to be free

9

from communication they do not particularly want to hear or even an informal correction from command staff." *Id.* at 9. Shover further asserts that "[w]hile there is a clearly established right to file a grievance there is nothing in the record, including Plaintiff's own filings, that Lieutenant Shover's conduct interfered with Plaintiff's ability to file grievances." *Id.*

Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether a defendant is entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, a defendant is entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

Because qualified immunity was raised as a defense at the summary judgment stage, Robinson must produce evidence to create a genuine issue of fact regarding whether Shover violated "clearly established" law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Robinson does not identify any caselaw governing this set of facts. Thus, even if Robinson could establish Shover violated his constitutional rights, Robinson has not met his burden of identifying authority establishing that Shover's actions were prohibited. The record does not establish that it would have been clear to a reasonable person that Shover's conduct was unlawful. Because Robinson cannot establish either a

10

constitutional violation or that a right was clearly established, Shover is entitled to qualified immunity. Qualified immunity thus provides an additional, alternative basis for the entry of summary judgment in favor of Shover in his individual capacity on the retaliation claim.[4]

C.  *Exhaustion of Administrative Remedies*

Shover alternatively asserts that Robinson's retaliation claim is barred because Robinson did not exhaust the available administration remedies for his grievances. Doc. 23-1 at 10. Because Robinson's retaliation claim fails for other reasons, as set out above, I need not consider this additional argument.

VI.  CONCLUSION

For the reasons set forth herein, defendant Chad Shover's motion (Doc. 23) for summary judgment is **granted**. Judgment **shall enter** in favor of Shover and against Robinson and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 4th day of March, 2024.

_____
Leonard T. Strand
United States District Judge

---

[4] To the extent Robinson is suing Shover in his official capacity, that claim must be denied. "A suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To impose § 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). As noted in the Initial Review Order (Doc. 16), Robinson makes no such allegation.